IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TERI L. ENGLE, individually, and on behalf of a Class of all others similarly situated; and BRIAN J. ENGLE, individually, and on behalf of a Class of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>WINDGATE RANCH HOMEOWNERS ASSOCIATION, INC., a Nebraska nonprofit corporation; and VANDELAY INDUSTRIES, LLC, a Nebraska limited liability company, doing business as The HOA Company;<br><br>Defendants. | **8:25CV479**<br><br><br>**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND** |

Plaintiff Teri L. Engle (Teri) originally filed this putative class action on June 18, 2025, in the District Court for Douglas County, Nebraska. Filing 1 at 9–40. The complaint was first amended on July 8, 2025, while still in state court, to *inter alia* add another named plaintiff, Brian J. Engle (Brian). Filing 1 at 60–107. Defendant Windgate Ranch Homeowners Association, Inc., (the HOA) filed a Notice of Removal of this case to this federal court on July 29, 2025. Filing 1 at 1–8. Plaintiffs filed a motion on November 21, 2025, Filing 26, seeking leave to file a second amended complaint and to remand the matter to state court. The Court granted the part of Plaintiffs' motion seeking leave to file a second amended complaint. Filing 30 (text order). On November 24, 2025, Plaintiffs filed the Second Amended Complaint. Filing 31. The part of Plaintiffs' motion seeking remand is now before the Court. For the reasons stated below, the Court grants Plaintiffs' motion seeking remand.

## I.  INTRODUCTION

### A.  Factual Background

"The Court assumes the allegations in the Complaint are true for the purposes of evaluating the motion to remand." *Welsh v. DePuy Orthopaedics, Inc.*, No. 4:24-cv-01541-SEP, 2025 WL 2780828, at *1 (E.D. Mo. 2025). The Court therefore draws the following factual background from Plaintiffs' Second Amended Complaint. *Royal Canin U.S.A. Inc. v. Wullschleger*, 604 U.S. 22, 30, 36 (2025) (saying that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says" and that the "old complaint has become irrelevant").

Named Plaintiffs Teri and Brian are allegedly "citizens of Nebraska" and are suing on behalf of themselves and a putative class consisting only of "Nebraska citizens who, on or after December 1, 2023, own or owned one or more of the originally platted 265 residential lots within Windgate Rach Two, a subdivision of Douglas County Nebraska." Filing 31 at 2 (¶ 3), 22 (¶ 85); *Royal Canin U.S.A.*, 604 U.S. at 30 ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says."); *see* 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined for purposes [of the Class Action Fairness Act (CAFA)] as of the date of filing of the complaint or amended complaint. . . ."). Defendants, the HOA and Vandelay Industries, LLC, (Vandelay) are also allegedly citizens of Nebraska. Filing 31 at 2 (¶¶ 4–5).

According to the Second Amended Complaint, "Windgate Ranch Two" is a platted subdivision in Douglas County, Nebraska. Filing 31 at 4 (¶ 11) (original emphasis omitted). The Second Amended Complaint maintains that, on July 14, 2014, the developer of Windgate Ranch Two, Pacific Windgate II, LLC, "executed a document titled: 'DECLARATION OF COVENANTS, CONDITIONS, AND EASEMENTS OF WINGATE [sic] RANCH II, A

SUBDIVISION IN DOUGLAS COUNTY NEBRASKA'" (the 2014 Covenants). Filing 31 at 4 (¶ 14). The 2014 Covenants were allegedly recorded on July 14, 2014, in the office of the Douglas County Register of Deeds. Filing 31 at 4 (¶ 14).

The Second Amended Complaint also alleges that five individuals that owned or resided in homes within Windgate Ranch Two "caused the incorporation of" the HOA in or about October 2023. Filing 31 at 4–5 (¶ 15). Put generally, Plaintiffs allege that the HOA wrongfully created and recorded certain instruments relating to Windgate Ranch Two and has wrongfully assessed and collected purported homeowner association dues within the subdivision. *See* Filing 31 at 3 (¶ 9). The HOA allegedly first imposed homeownership dues in December 2023 (the 2024 dues), claiming authority under the 2014 Covenants. Filing 31 at 5 (¶ 16). These dues were allegedly assessed against "each residential lot within Windgate Ranch Two." Filing 31 at 5 (¶ 16). The HOA allegedly retained Vandelay to assist the HOA's assessment efforts by preparing and issuing invoices for the 2024 dues and by collecting those dues for the HOA. Filing 31 at 5 (¶ 17).

The HOA then began drafting amendments (the 2024 Amendments) to the 2014 Covenants at some point between December 2023 and July 2024. Filing 31 at 5 (¶ 18). The HOA allegedly "secured a written assignment [(the Assignment)] of all rights under the 2014 Covenants" from "Pacific Windgate II, LLC, the developer of Windgate Ranch Two" on July 11, 2024, and allegedly recorded the 2024 Amendments "ostensibly under the purported rights assigned to it in the Assignment." Filing 31 at 6 (¶ 20). Plaintiffs point out that the 2024 Amendments and the Assignment allegedly "contained legal descriptions of lots only in 'Windgate Ranch II,'" not Windgate Ranch Two, the "correct subdivision name." Filing 31 at 6 (¶ 23).

In December 2024, the HOA allegedly imposed another round of ownership dues (the 2025 dues) "against each residential lot within Windgate Ranch Two." Filing 31 at 6 (¶ 21). The HOA

3

allegedly retained Vandelay "to prepare and issue invoices" and to collect the 2025 dues. Filing 31 at 6 (¶ 22).

Plaintiffs allege that Defendants have wrongfully represented to the public that the HOA "was the homeowners 'Association' identified in the 2014 Covenants." Filing 31 at 7 (¶ 24). Plaintiffs also allege that Defendants misrepresented the HOA's authority to impose the 2024 and 2025 rounds of dues and that such misrepresentations have caused damage including financial loss and the clouding of titles in Windgate Ranch Two. Filing 31 at 7 (¶¶ 24–25). Plaintiffs allege that the wrongful conduct is ongoing and that the HOA is "continuing its recordation of liens and/or threats thereof, against Windgate Ranch Two homes of Plaintiffs who refuse to pay such Windgate Ranch Two assessments and dues." Filing 31 at 7–8 (¶¶ 24–27).

## B. Procedural Background

This putative class action was originally filed by Teri on June 18, 2025, in the District Court for Douglas County, Nebraska. Filing 1 at 9–40. The complaint asserted fifteen causes of action, including one federal claim pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. Filing 1 at 9–40. On July 8, 2025, Teri filed the First Amended Complaint that, among other things, added Brian as an additional named plaintiff and asserted twenty causes of action, including one pursuant to the FDCPA. Filing 1 at 60–107. The HOA filed a Notice of Removal of this case to this Court on July 29, 2025. Filing 1 at 1–8.

Plaintiffs filed a motion on November 21, 2025, Filing 26, seeking leave to file a second amended complaint and to remand the matter to state court. Plaintiffs filed a brief in support of the motion on November 21, 2025. Filing 27. On November 24, 2025, the Court granted the part of Plaintiff's motion seeking leave to file a second amended complaint. Filing 30 (text order). Plaintiffs filed a Second Amended Complaint that same day. Filing 31. The Second Amended Complaint does not include an FDCPA claim. Filing 31. Additionally, the named plaintiffs are now

4

suing on behalf of a putative class "defined as only Nebraska citizens who, on or after December 1, 2023, own or owned one or more of the originally platted 265 residential lots within Windgate Ranch Two." Filing 31 at 2 (¶ 3), 22 (¶ 85); 28 U.S.C. § 1332(d)(7).

The HOA and Vandelay filed separate briefs opposing the part of Plaintiff's motion requesting remand on December 22, 2025. Filing 37; Filing 39. Plaintiffs filed a reply brief in support of the motion on December 29, 2025. Filing 40.

## II. LEGAL ANALYSIS

### A. Motion to Remand for Lack of Jurisdiction

#### 1. Class Action Fairness Act Standards

"Because of perceived 'abuses of the class action device,' Congress enacted CAFA to provide, *inter alia*, for 'Federal court consideration of interstate cases of national importance.'" *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (quoting Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4). "Accordingly, CAFA grants broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction." *Id.* "Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, *i.e.,* any class member and any defendant are citizens of different states; and there are at least 100 members in the class." *Id.* If the minimal diversity requirement of CAFA jurisdiction does not exist, and no separate basis for jurisdiction exists, the Court lacks subject matter jurisdiction and must remand the case. *Marple v. T-Mobile Cent., LLC*, No. 10–CV–00954–NKL, 2011 WL 300162, at *2 (W.D. Mo. 2011) (collecting cases); 28 U.S.C. § 1447(c) (saying "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

5

### 2. *The Parties' Arguments*

Plaintiffs argue that the case no longer has minimal diversity or an amount in controversy exceeding $5,000,000, as the Second Amended Complaint does not reassert the First Amended Complaint's FDCPA claim and redefined the putative class to include only Nebraska citizens. *See generally* Filing 31. This matters according to Plaintiffs because minimal diversity and an amount in controversy exceeding $5,000,000 are necessary for the Court to have jurisdiction under CAFA. Filing 27 at 7. Plaintiffs therefore assert that the Court no longer has jurisdiction over the matter and that the Court must therefore remand the matter under 28 U.S.C. § 1447(c). Filing 27 at 7 (citing 28 U.S.C. § 1447(c)).

In response, Defendants assert that Plaintiffs' arguments relating to the lack of minimal diversity and the amount in controversy are unavailing.[1] Filing 37 at 3–5, 9–11; Filing 39 at 2–4. According to Defendants, "[t]he existence of CAFA jurisdiction is determined by looking at the complaint at the time of removal, even when "subsequent events may remove from the case the facts on which jurisdiction was predicated." Filing 37 at 10 (original emphasis omitted) (citing *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 789–90 (8th Cir. 2012)); *see also* Filing 39 at 3. According to Defendants, "Plaintiffs' opening Complaint unambiguously established both federal question jurisdiction under the FDCPA and under CAFA" and that Plaintiffs' "subsequent amendment via their Second Amended Complaint cannot serve to force the removing party to reprove the validity of removal under the amended complaint." Filing 37 at 4; *see also* Filing 39 at 4. In other words, "Plaintiffs' attack on the validity of [the HOA's] removal is without force because it is predicated on the Current Complaint." Filing 39 at 4; *see also* Filing 37 at 4.

---

[1] The HOA maintains that "the face of the Second Amended Complaint itself, along with the affidavits submitted by Defendants herewith, establish that federal jurisdiction is solidly supported by the Class Action Fairness Act." Filing 37 at 1. The Court has received no affidavits from either defendant.

6

According to Defendants, Plaintiffs "impermissibly seek to require [the HOA] to justify removal under the Second Amended Complaint." Filing 37 at 5; *see also* Filing 39 at 4.

In reply, Plaintiffs assert that "[o]nce a plaintiff contests federal subject-matter jurisdiction, the Eighth Circuit requires the removing party (on the amount-in-controversy element) to establish, by a preponderance, that a factfinder might legally award more than $5,000,000." Filing 40 at 3. According to Plaintiffs, "Neither Defendant has submitted competent proof . . . sufficient to establish, by a preponderance, that recoverable damages exceed, or even may exceed, $5,000,000." Filing 40 at 5. Plaintiffs also maintain that 28 U.S.C. § 1332(d)(7) "fixes class citizenship as of the 'complaint or amended complaint.'" Filing 40 at 10 (original emphasis omitted). Plaintiffs assert that the jurisdictional analysis relating to minimal diversity assesses the Second Amended Complaint, not the removed complaint. *See* Filing 40 at 10 (citing *Royal Canin U.S.A.*, 604 U.S. 22, for the proposition that the Court looks to the amended complaint, not the former, now superseded removed complaint, when determining whether jurisdiction exists). On this basis, Plaintiffs argue that minimal diversity does not exist. Filing 40 at 8–9.

3.   *The Court Does Not Have Jurisdiction*

"'Federal courts' . . . 'are courts of limited jurisdiction'" *Royal Canin U.S.A.*, 604 U.S. at 26 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The United States Supreme Court has further explained that "all lower federal courts" are limited by statute and that "Congress determines, through its grants of jurisdiction, which suits those courts can resolve." *Id.* Congress has provided certain limitations on CAFA jurisdiction. *Westerfeld*, 621 F.3d at 822. Under CAFA, the amount in controversy must exceed $5,000,000, there must be minimal diversity among the parties, and there must be at least 100 members in the class in order for the federal court to have jurisdiction. *Id.* (citing 28 U.S.C. § 1332(d)).

7

The Supreme Court has also explained that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Royal Canin U.S.A.*, 604 U.S. at 30. This is because "[t]he amended complaint becomes the operative one; and in taking the place of what has come before, it can either create or destroy jurisdiction." *Id.* at 35. "So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.* at 35–36. Therefore, post-removal amendments can "divest" a federal court of its jurisdiction because "jurisdiction follows from (and only from) the operative pleading." *Id.* at 35. "[T]he presence of jurisdiction, in removed as in original cases, hinges on the amended, now operative pleading." *Id.* at 39.

The operative Second Amended Complaint does not reassert the FDCPA claim and has limited the putative class to Nebraska citizens. Filing 31. The Second Amended Complaint's failure to reassert a federal question deprives the Court of jurisdiction under 28 U.S.C. § 1331. The Second Amended Complaint's citizenship-based limitation on the putative class also destroys any formerly existing minimal diversity. Courts can only exercise jurisdiction under CAFA where there is minimal diversity among the parties. *Westerfeld*, 621 F.3d at 822. Both named plaintiffs are citizens of Nebraska, the putative class is "defined as only Nebraska citizens who, on or after December 1, 2023, own or owned one or more of the originally platted 265 residential lots within Windgate Ranch Two, a subdivision in Douglas County, Nebraska," and both defendants are allegedly citizens of Nebraska. Filing 31 at 2 (¶¶ 2–5), 22 (¶ 85); 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined for purposes [of CAFA] as of the date of filing of the complaint or amended complaint. . . ."). Defendants do not

8

contest that the named plaintiffs are or that they, themselves, are citizens of Nebraska. *See generally* Filing 37; Filing 39. Redefining the class can destroy minimal diversity, and it does so here, as all parties to this action are allegedly citizens of Nebraska. *See Royal Canin U.S.A.*, 604 U.S. at 38 ("[I]n removed cases too, amending a complaint to join a non-diverse party destroys diversity jurisdiction.").

As Defendants point out, the Eighth Circuit has stated that "[j]urisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated." Filing 39 at 3 (citing *Hargis*, 674 F.3d at 789–90). The Eighth Circuit has provided further guidance, however, explaining that the "state of things"—that is, "the actual facts on the ground"—is the subject of that rule, not the "*alleged* state of things." *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922–23 (8th Cir. 2023) (emphasis in original), *aff'd* 604 U.S. 22 (2025); *see also Royal Canin U.S.A.*, 604 U.S. at 36 n. 5 (saying the "so-called time-of-filing rule, *Rockwell [v. Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007)]* explained, concerns only the actual "state of things" relevant to jurisdiction—meaning, the facts on the ground, rather than (as addressed here) the claims and parties that the plaintiff includes in a complaint" and that the Eighth Circuit discussed "that distinction" in the case below).

The rule cited by Defendants applies to the actual facts on the ground at the time of filing or removal. *See Wullschleger*, 75 F.4th at 923. The Eighth Circuit has provided examples of when the facts on the ground change yet jurisdiction remains because of the application of the rule cited by Defendants. *Id.* The Eighth Circuit stated, "[s]uppose, for example, that one party destroys diversity by moving to another state after filing. This change to the 'state of things' does not destroy diversity jurisdiction, even if living in that state from the beginning would have." *Id.* (citing *Morgan's Heirs v. Morgan*, 15 U.S. 290 (1817)). "The same goes for after-filing changes to the

amount-in-controversy." *Id.* (citing *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294–95 (1938)).

Changes to the alleged state of things are treated differently than changes to the actual facts on the ground. *Id.* Changes to the alleged state of things "can create or destroy federal jurisdiction." *Id.* Important here, changes to "the claims and parties that the plaintiff includes in a complaint" are treated as changes to the alleged state of things. *Royal Canin U.S.A.*, 604 U.S. at 36 n.5. Thus, "a plaintiff can . . . replace a diverse defendant with a non-diverse one to 'divest[ ] the district court of jurisdiction.'" *Wullschleger*, 75 F.4th at 923 (quoting *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP,* 362 F.3d 136, 142 (1st Cir. 2004)). In that example, "the facts on the ground have not changed, but the facts in the complaint have." *Id.*

The Second Amended Complaint removed the FDCPA claim and defined the class of plaintiffs as Nebraska citizens. Filing 31. This reconfiguration brought the case outside the Court's jurisdiction by removing the FDCPA-based federal question and by destroying minimal diversity. *Royal Canin U.S.A.*, 604 U.S. at 35 (saying that "the presence of jurisdiction, in removed as in original cases, hinges on the amended, now operative pleading"); 28 U.S.C. 1332(d)(7); *Westerfeld*, 621 F.3d at 822 ("Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, *i.e.,* any class member and any defendant are citizens of different states; and there are at least 100 members in the class."); 28 U.S.C. § 1331.

The Court lacks jurisdiction over the matter for the foregoing reasons and therefore remands the matter to the District Court for Douglas County, Nebraska. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The Court accordingly does not reach Plaintiffs' arguments relating

to the amount in controversy or CAFA's Home-State and Local Controversy Exceptions under 28 U.S.C. § 1332(d)(4)(A)–(B).

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that the part of Plaintiffs' Motion seeking remand, Filing 26, is granted and that this matter is remanded pursuant to 28 U.S.C. § 1447(c) to the District Court for Douglas County, Nebraska, at Case No. CI 25-5162.

Dated this 24th day of April, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge